IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED UROLOGY CENTERS, LLC,

    Plaintiff,

v.                                                        Civ. No. 21-11 MV/KK

OPTUMCARE NEW MEXICO, LLC,

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

THIS MATTER is before the Court on Plaintiff United Urology Centers, LLC's Motion to Compel (Doc. 22) ("Motion"), filed March 30, 2021. Defendant filed a response in opposition to the Motion on April 13, 2021, and Plaintiff filed a reply in support of it on April 21, 2021. (Docs. 26, 28.) The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, FINDS that the Motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.[1]

## I. Introduction

Plaintiff United Urology Centers, LLC alleges the following in its complaint. This case concerns a Sublease Agreement ("Sublease") between Plaintiff and Defendant OptumCare New Mexico, LLC ("Optum"), formerly known as DaVita Medical Group New Mexico, LLC ("DaVita"). (Doc. 1 at 5.) In the Sublease, the parties agreed that Plaintiff would sublet certain commercial property in Albuquerque to Defendant for use as an outpatient surgical center. (*Id.*)

---

[1] The parties have adequately presented their arguments in their written submissions and a hearing on the Motion would not materially assist the Court in resolving the issues presented. The Court will therefore deny Defendant's request for a hearing on the Motion. (*See* Doc. 26 at 1, 11.)

The parties entered into the Sublease on May 14, 2019 for a term ending on January 31, 2022, and Defendant took possession of the premises on or about May 14, 2019. (*Id.* at 5-6.)

On May 23, 2019, the premises were vandalized and burglarized. (*Id.* at 7.) Afterward, Defendant indicated its intent to repair the resulting damage and open the surgical center as planned. (*Id.*) However, on June 25, 2019, Defendant notified Plaintiff in writing that it was terminating the Sublease pursuant to the agreement's early-termination clause. (*Id.*) The early-termination clause, which is set forth in Section 3(a) of the Sublease, required Defendant to "diligently pursue obtaining" all licenses, permits, and accreditations ("Licenses") necessary for it to operate the subject premises as an outpatient surgical center.[2] (*Id.* at 6.) However, "[i]f, by no fault of" its own, Defendant was "unable to obtain the Licenses by June 25, 2019," then the early-termination clause authorized Defendant to terminate the Sublease by providing written notice to Plaintiff no later than July 15, 2019. (*Id.*)

In its June 25, 2019 notice, Defendant informed Plaintiff that it was terminating the Sublease because it was unable to obtain the necessary Licenses "[d]ue to the theft and vandalism" at the premises. (*Id.* at 76.) On August 2, 2019, Defendant confirmed its early termination of the Sublease but added that it was "unable to obtain the Licenses by June 25, 2019 as a result of a whole host of additional issues that were completely unrelated to the [t]heft." (*Id.* at 77-78.) According to Plaintiff, Defendant's proffered reasons for terminating the Sublease were pretextual and the true reasons were DaVita's June 19, 2019 merger with Optum and these entities' decision that they no longer wanted to open a surgical center at the premises. (*Id.* at 8.) Plaintiff therefore rejected Defendant's termination of the Sublease. (*Id.*) Nevertheless, Defendant abandoned the

---

[2] The early-termination clause elaborated that, "[i]n the event that approval of [Defendant's] Licenses are conditioned upon [Defendant] performing some acts or series of acts, then [Defendant] shall be obligated to make diligent efforts to perform such acts prior to [Defendant's] terminating this Sublease pursuant to this paragraph 3(a)." (Doc. 1 at 6, 21.)

2

premises on or about June 25, 2019 and has not paid rent pursuant to the agreement since October 1, 2019. (*Id.*)

Plaintiff filed this action for breach of contract in state court on December 3, 2020, and Defendant removed it to this Court on January 5, 2021 based on diversity jurisdiction. (*Id.* at 1-3, 5.) In its complaint, Plaintiff alleges that Defendant breached the Sublease by wrongfully repudiating the agreement, abandoning the premises, and failing to make monthly rental payments. (*Id.* at 9-11.) Plaintiff seeks a declaratory judgment that Defendant's early termination of the Sublease was invalid and that Defendant remains obligated to pay rent under the agreement. (*Id.* at 11.) Plaintiff also seeks compensatory damages in the amount of the unpaid rent to date, or, alternatively, "an award of all of the rent payments due" pursuant to the Sublease's acceleration clause, as well as punitive damages, pre- and post-judgment interest, and costs and attorney fees. (*Id.* at 11-12.)

Plaintiff also brought a claim for breach of contract based on Defendant's alleged failure to pay for repairs arising out of the theft and vandalism at the subject premises in Count I of its complaint. (*Id.* at 9.) However, the parties have since settled that claim and the Court has dismissed Count I. (Docs. 23, 24.)

The discovery dispute presently before the Court concerns Plaintiff's First Set of Requests for Production to Defendant OptumCare New Mexico, LLC (Doc. 22-1) ("Requests"). Plaintiff served the Requests with its complaint on December 7, 2020. (Doc. 22 at 4.) After removal and pursuant to an agreed-upon extension, Defendant served written responses on March 15, 2021. (*Id.*) In its Motion, Plaintiff argues that Defendant's responses are deficient because: (1) to date, Defendant has produced no documents and no privilege log; and, (2) Defendant's relevance objections to six of the Requests are unfounded. (*Id.*) Defendant counters that it "anticipates

producing responsive documents" and a privilege log "by the end of April, 2021" and its relevance objections are valid. (Doc. 26 at 4-11.)

## II. Legal Standards

Federal Rule of Civil Procedure 26 permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. While "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865–66 (D.N.M. 2015) (quotation marks omitted).

Federal Rule of Civil Procedure 34 permits a party to serve on any other party requests to produce and permit the inspection and copying of documents, electronically stored information, and tangible items "within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a)(1). Such requests must, *inter alia*, "specify a reasonable time, place, and manner" for inspection. Fed. R. Civ. P. 34(b)(1)(B). If the responding party elects to produce copies of the requested documents instead of permitting inspection, such production must be completed "no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). Federal Rule of Civil Procedure 37 authorizes a party to move for an order compelling production if another party "fails to produce documents or fails to respond that inspection will be

permitted — or fails to permit inspection — as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

When a party withholds documents responsive to a request for production based on a claim of privilege or work-product protection, the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Privilege logs are "standard and customary when a privilege is asserted as a reason not to produce documents that are responsive to discovery requests," *Dorato*, 163 F. Supp. 3d at 895, and "failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007).

### III.  Analysis

**A.  Defendant's Delay in Producing Documents and a Privilege Log**

The Court will first address Plaintiff's request for an order compelling Defendant to immediately produce (1) documents responsive to the Requests and (2) a privilege log for any responsive documents withheld on a claim of privilege or work-product protection. In support of this request, Plaintiff argues that this is "not major litigation" and Defendant has had ample time to collect documents responsive to the Requests. (Doc. 22 at 5; Doc. 28 at 2-3.) Defendant, conversely, contends that its "document collection and review process is underway," it "anticipates producing responsive documents by the end of April," and it will also produce a privilege log for documents withheld on a claim of privilege or work-product protection. (Doc. 26 at 4-6.)

In its Requests, Plaintiff instructed Defendant to produce responsive documents "within 45 days of service of the complaint," *i.e.*, by January 21, 2021. (Doc. 22-1 at 1.) However, Plaintiff

5

served its Requests at the very beginning of this litigation, before removal made the Federal Rules of Civil Procedure applicable. Under those rules, a party may serve requests for production before the parties meet and confer in preparation for an initial scheduling conference, but such requests are not considered to have been served until the parties meet and confer, and responses are not due until 30 days thereafter. Fed. R. Civ. P. 26(d)(2), 34(b)(2)(A). Here, the parties did not meet and confer until February 2, 2021. (Doc. 15 at 1.) Thus, removal effectively voided the original deadline Plaintiff provided for document production.

Moreover, at an initial scheduling conference on February 25, 2021, defense counsel specifically informed the Court and opposing counsel "that given the size of Defendant's company and the amount of anticipated electronic discovery, stored on various and possibly scattered servers, he wished to have a lengthier discovery track to ensure Defendant met discovery production deadlines." (Doc. 18 at 1.) "Plaintiff's counsel indicated he did not oppose Defendant's request," and the Court adopted the parties' proposed track, pursuant to which discovery will not close until November 2, 2021.[3] (*Id.*)

As noted above, Defendant served written responses to Plaintiff's Requests on March 15, 2021. (Doc. 22 at 4.) In its responses, Defendant failed to specify an alternative date for document production under Rule 34(b)(2)(B). (*See generally* Doc. 22-2.) However, on March 25, 2021, Defendant informed Plaintiff that it required "additional time to conduct its e-discovery search and produce documents," but was working "diligently" on doing so and anticipated producing documents and a privilege log "by the end of April." (Doc. 22-4 at 1.)

---

[3] "However, the Court cautioned that, given this lengthy discovery track, it [will] not grant requests to extend deadlines barring exceptionally good cause." (Doc. 18 at 1.)

6

In light of the foregoing procedural history, as well as the comprehensive nature of Plaintiff's Requests, the Court finds that April 30, 2021 is a "reasonable time" for Defendant to produce responsive documents and a privilege log under Rule 34(b)(2)(B). However, the Court acknowledges Plaintiff's concern that Defendant "has not committed to that date, stating only that it 'anticipates' producing documents at that time." (Doc. 28 at 2-3.) As such, the Court will grant Plaintiff's Motion to the extent that it will set a firm deadline of May 10, 2021 for Defendant to produce documents and a privilege log responsive to the Requests to which it did not object in its responses. Should Defendant require additional time for its document or privilege log production, it may file a motion demonstrating good cause for an extension of time.

**B.    Defendant's Relevance Objections**

The Court next turns to Plaintiff's request for an order overruling Defendant's relevance objections and compelling Defendant to respond to Plaintiff's Requests Nos. 1-3, 7-8, and 22. (Doc. 22 at 5-9.)

Request No. 1:

In Request No. 1, Plaintiff asks Defendant to produce "[a]ll documents that reflect [Defendant's] negotiation of and decision to enter into the Sublease." (Doc. 22-2 at 2.) Defendant objected to this Request on the basis that "documents pre-dating the Sublease and documents relating to neg[oti]ations and decisions to enter into [it] are not relevant." (*Id.*) Plaintiff subsequently offered to narrow the scope of Request No. 1 to responsive documents relating to the Sublease's early-termination and rent-acceleration clauses, which are set forth in Sections 3(a) and 10 respectively.[4] (Doc. 22 at 6.) According to Plaintiff, the Court should compel Defendant to

---

[4] In its offer to narrow the scope of Request No. 1, Plaintiff referred to "Section 3" and "Section 10" of the Sublease. (Doc. 22-3 at 2.) However, all of Plaintiff's arguments regarding Section 3 are limited to the early-termination clause set forth in Section 3(a). (*See* Doc. 1 at 21.) Thus, the Court construes Plaintiff's offer as one to narrow the scope of Request No. 1 to responsive documents relating to Sections 3(a) and 10 of the Sublease.

7

respond to Request No. 1 as narrowed because documents reflecting the parties' negotiation of the early-termination and rent-acceleration clauses are relevant to explain the meaning of the terms used in those clauses. (*Id.* at 5-6; Doc. 28 at 5-6.)

Under New Mexico law,[5] the parol evidence rule controls the evidentiary value of documents and testimony regarding contract negotiations in breach of contract cases. "The parol evidence rule is a rule of substantive law that bars admission of evidence extrinsic to the contract to contradict and perhaps even to supplement the writing." *Ormrod v. Hubbard Broad., Inc.*, 328 F. Supp. 3d 1215, 1229 (D.N.M. 2018) (quoting *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 16, 112 N.M. 504, 509, 817 P.2d 238, 243). However, "[t]he rule should not bar introduction of evidence to explain terms." *Id.* (quoting *C.R. Anthony Co.*, 1991-NMSC-070 at ¶ 16, 112 N.M. at 509, 817 P.2d at 243). Rather,

> [t]he court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder.

*Id.* (quoting *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 781, 845 P.2d 1232, 1235) (internal citations omitted). Thus, under New Mexico law, evidence of the circumstances surrounding the Sublease's execution, including the parties' negotiations, may be relevant to explain its terms.

---

[5] The Sublease indicates that New Mexico law governs its validity, performance, and enforcement. (Doc. 1 at 32.)

According to Defendant, the Sublease's integration clause nevertheless nullifies any relevance the requested documents might otherwise have had. (Doc. 26 at 7-8.) That clause states in pertinent part:

> Complete Agreement. Any stipulations, representations, promises or agreements, oral or written, made prior to or contemporaneously with this agreement shall have no legal consequences and the only agreement made and binding upon the parties with respect to the leasing of the [premises] is this Lease, as the complete and total integration of the intent and understanding of [the parties].

(Doc. 1 at 32 (underlining in original).)

"An integration clause and the parol-evidence rule generally operate in tandem. The integration clause makes it clear that the parties intend the rule to apply." *Israel v. Glasscock*, No. CIV. 08-0339 JB/LFG, 2009 WL 1393218, at *11 (D.N.M. Jan. 7, 2009). However, like the parol evidence rule, an "integration clause does not act to bar the admission" of extrinsic evidence of "the circumstances under which the parties contracted." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, 144 N.M. 449, 457 n.2, 188 P.3d 1200, 1208 n.2; *see also Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 57, 116 N.M. 52, 69, 860 P.2d 182, 199 ("While extrinsic evidence is inadmissible to contradict, and perhaps even to supplement, the terms of an integrated agreement, it is admissible to *explain* the terms of the agreement.") (emphasis in original). Thus, evidence of the parties' negotiations may be relevant to explain the Sublease's terms notwithstanding the agreement's integration clause.

Moreover, as narrowed, the documents Request No. 1 seeks are particularly likely to bear on contract terms whose meaning the parties dispute. Defendant admits that whether it validly terminated the Sublease under Section 3(a) is a central issue in this case.[6] (Doc. 26 at 7.) And, Plaintiff has plausibly explained why the parties are likely to dispute the meaning of key terms in

---

[6] Indeed, Defendant contends that whether it lawfully terminated the Sublease under Section 3(a) is the "only issue in this case." (Doc. 26 at 7.)

Section 3(a) in the course of litigating that issue. Specifically, Plaintiff observes that the parties will likely dispute whether Defendant

> was "at fault" in initially failing to secure the subleased building or otherwise protect against it being vandalized, or whether it was "diligent" in taking steps to obtain licenses prior to June 25, 2019, including steps to promptly assess and repair the damage caused by vandals in late May 2019.

(Doc. 28 at 1.) The documents Request No. 1 seeks, as narrowed, are likely to bear on whether the terms "diligently pursue" and "by no fault" are ambiguous in the context Plaintiff describes and, if so, on the meaning of these terms. (*Id.*) Thus, the requested documents are relevant under Rule 26(b)(1) to the extent that they relate to Section 3(a).

Further, as Plaintiff notes, Defendant has not denied that the parties disagree regarding whether Plaintiff may properly invoke the Sublease's rent-acceleration clause in this case. (Doc. 28 at 6 n.3; *see generally* Doc. 26.) Thus, documents regarding the parties' negotiation of Section 10 are also relevant under Rule 26(b)(1) because they may shed light on whether that clause is ambiguous and if so on its meaning. For the foregoing reasons, the Court will grant Plaintiff's Motion to the extent that it seeks an order overruling Defendant's relevance objection to Request No. 1 and compelling Defendant to produce documents responsive to the narrowed Request.

<u>Requests Nos. 2, 3, 7, and 8</u>:

Defendant's objections and Plaintiff's countervailing arguments are the same for Requests Nos. 2, 3, 7, and 8, and the Court will therefore address these Requests collectively. Request No. 2 seeks "[a]ll documents that reflect [Defendant's] discovery of the [May 2019 t]heft/[v]andalism [i]ncident." (Doc. 22-2 at 2.) Requests Nos. 3 and 8 seek all documents reflecting any actions Defendant took to occupy and secure the premises and ensure it was not burglarized or vandalized, and the dates of these actions. (*Id.* at 2-5.) Finally, Request No. 7 seeks all documents that reflect

10

Defendant's "efforts to inspect, assess, and repair any damage resulting from the [t]heft/[v]andalism [i]ncident." (*Id.* at 4.)

> Defendant made the same objection to each of these Requests, *i.e.*,
>
> [t]he parties have resolved Count I of the Complaint pursuant to a settlement agreement in which Plaintiff agrees to dismiss Count I of the Complaint with prejudice. Accordingly, the information sought in this Request is not relevant to any party's claim or defense in this case.[7]

(Doc. 22-2 at 2-5.) Defendant agreed to produce responsive documents "reflecting that the theft/vandalism played a role in [its] decision to terminate the Sublease," but no other responsive documents. (Doc. 26 at 9-10.)

Plaintiff argues that the Court should overrule Defendant's objections to Requests Nos. 2, 3, 7, and 8 because responsive documents are relevant to whether Defendant was entitled to terminate the Sublease under Section 3(a). Specifically, Plaintiff contends that the requested documents are relevant to this central issue because they bear on whether Defendant "diligently pursue[d] obtaining the Licenses" and whether Defendant was unable to timely obtain them "by no fault" of its own. (Doc. 1 at 21.) The Court agrees. In its notice of early termination, Defendant attributed its inability to obtain the Licenses to the theft and vandalism at the premises. (*Id.* at 76.) As such, Plaintiff is entitled to proportional discovery exploring whether Defendant was at "fault" for the theft and vandalism because it failed to occupy and/or secure the property, and whether Defendant "diligently pursue[d]" the Licenses by trying to repair the resulting damage. The Court will therefore grant Plaintiff's Motion to the extent it seeks an order overruling Defendant's

---

[7] For the first time in its response to Plaintiff's Motion, Defendant also objected that Requests Nos. 2, 3, 7, and 8 are overbroad. (Doc. 26 at 9.) Objections to requests for production that are not timely asserted are waived. *Sw. Multi-Craft Health & Welfare Tr. Fund v. IAP World Servs., Inc.*, No. CV 07-337 MCA/ACT, 2008 WL 11411978, at *1 (D.N.M. Apr. 15, 2008). Moreover, although the Requests are broad in seeking "all documents that reflect" the specified topics, these topics are limited to relatively narrow categories of actions that would have been taken during the brief period of time the Sublease was undisputedly in effect, *i.e.*, from May 14, 2019 to June 25, 2019. Thus, Defendant's belated overbreadth objections are not well taken.

relevance objections to Requests Nos. 2, 3, 7, and 8 and compelling Defendant to respond to these Requests.

Request No. 22:

Finally, Request No. 22 seeks all documents "generated during 2019 that memorialize or reflect consideration, discussion or a decision whether [Defendant] should or would open an outpatient surgery center in Albuquerque other than at the [p]remises." (Doc. 22-2 at 11.) Defendant objected that responsive documents generated before May 10, 2019—the date its representative signed the Sublease—are irrelevant. (*Id.* at 11-12; *see* Doc. 1 at 34.) Defendant also objected to the Request based on the attorney-client privilege and attorney work-product doctrine. (Doc. 22-2 at 11-12.) Defendant indicated it will produce non-privileged, responsive documents "for the time period of May 10, 2019 through August 2, 2019." (*Id.* at 12.)

In its Motion, Plaintiff argues that the Court should compel Defendant to produce non-privileged, responsive documents generated before May 10, 2019 because

> [i]f DaVita was already considering opening an outpatient surgery center at another location even before entering into the sublease on May 14, 2019, and decided to terminate the sublease because it ultimately determined that it preferred that location, any pre-May 10, 2019, documents would be just as relevant as documents generated after that date to determining if the early termination was pre-textual.

(Doc. 22 at 9.) Plaintiff also argues for the first time in its reply that all documents responsive to Request No. 22 are relevant even though Defendant did not in fact open a surgical center elsewhere in Albuquerque, because they could show that Defendant's termination of the Sublease was "driven . . . by a business decision . . . not to have an [outpatient surgical center] in Albuquerque at all." (Doc. 28 at 7.)

In considering Plaintiff's Motion as it relates to Request No. 22, the Court finds it significant that Defendant has agreed to produce responsive documents generated from May 10,

12

2019 to August 2, 2019. Thus, the only documents in dispute are those generated *before* Defendant decided to enter into the Sublease and *after* it decided to terminate the agreement. In the Court's view and on the current record, documents showing that Defendant did or did not consider opening a surgical center elsewhere in Albuquerque before it entered into the Sublease or over a month after it terminated the agreement are unlikely to shed any light on its motives for early termination. It would have been both legitimate and unremarkable for Defendant to consider other sites for its surgical center before entering into the Sublease and/or after it terminated the agreement, and evidence that it did so would have no tendency to make any particular motive for early termination more or less likely. Plaintiff's various theories to the contrary are entirely conjectural and its request for such documents bears the marks of a prohibited "fishing expedition." *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002). For these reasons, the Court will deny Plaintiff's Motion to the extent that it seeks an order compelling Defendant to produce documents responsive to Request No. 22 generated before May 10, 2019 or after August 2, 2019.

## C.     Apportionment of Expenses

Finally, because the Court will grant Plaintiff's Motion in part and deny it in part and both sides' positions were substantially justified in part, the Court declines to apportion the reasonable expenses for the Motion.  Fed. R. Civ. P. 37(a)(5)(C) ("If [a motion to compel] is granted in part and denied in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added).

## IV.  Conclusion

For the reasons discussed herein, it is hereby ORDERED that Plaintiff United Urology Centers, LLC's Motion to Compel (Doc. 22) is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is GRANTED to the extent that:

    a. By **Monday, May 10, 2021**, Defendant shall produce documents responsive to Plaintiff's First Set of Requests for Production to Defendant OptumCare New Mexico, LLC (Doc. 22-2) to the extent that it did not object to these Requests;

    b. By **Monday, May 24, 2021**, Defendant shall produce documents responsive to:

        (1) Request No. 1 relating to Sections 3(a) and 10 of the Sublease; and,

        (2) Requests Nos. 2, 3, 7, and 8; and,

    c. If Defendant withholds any documents responsive to the Requests on a claim of privilege or work-product protection, it shall produce a privilege log regarding the withheld document(s) by the date document production would have been required.

2. In all other respects, the Motion is DENIED.

IT IS SO ORDERED.

*Kirtan Khalsa*
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE